UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAVEL LIFCHITS, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *  Civil Action No. 18-cv-12637-ADB |
| INTEGON NATIONAL INSURANCE CO., | * |
| and KEY 4U TRANSPORTATION CORP., | * |
| | * |
| Defendants. | * |
| | * |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

BURROUGHS, D.J.

On December 26, 2018, Plaintiff Pavel Lifchits ("Plaintiff"), appearing *pro se*, filed a complaint against Integon National Insurance Co. ("Integon") and Key 4U Transportation Corp. ("Key 4U") (collectively, "Defendants") for damages arising out of an April 9, 2018 car accident in Queens, New York involving Plaintiff's vehicle and a school bus operated by Key 4U and insured by Integon. [ECF No. 1; ECF No. 24]. Plaintiff seeks $4,500.00 for damage to his vehicle and $78,000.00 for his "loss of health" as a result of the accident. [ECF No. 24 at 6]. Presently before the Court are the Defendants' respective motions to dismiss. [ECF Nos. 38, 40]. For the reasons set forth below, Integon's motion, [ECF No. 38], is GRANTED and Key4U's motion, [ECF No. 40], is DENIED.

## I.     BACKGROUND

### A.     Factual Background

The following facts are taken from the complaint, [ECF No. 1], and amended complaint, [ECF No. 24], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Typically, an

amended complaint supersedes an original complaint, however, "that does not mean that the original complaint is a nullity and can be relevant for no purpose whatever."  Ultra-Temp Corp. v. Advanced Vacuum Sys., 194 F.R.D. 378, 382 (D. Mass. 2000); see also Fiorillo v. United Techs. Corp., No. 13-cv-01287, 2015 WL 5797010, at *1 (D. Conn. Sept. 30, 2015) ("[T]he Court may still credit admissions in the original complaint and attached exhibits." (internal quotation marks and citation omitted)).  Additionally, because Plaintiff is acting *pro se*, the Court holds the complaint to a less stringent standard.  See Bobola v. F/V Expectation, 204 F. Supp. 3d 382, 387 (D. Mass. 2016) ("A document filed by a *pro se* party 'is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007))).

Plaintiff's amended complaint fails to establish this Court's jurisdiction or explain why venue is proper here.  See [ECF No. 24].  In addition, the amended complaint contains limited details about the accident at issue.  See [id.].  Accordingly, the Court will also review Plaintiff's original complaint, [ECF No. 1], and the exhibits attached thereto to discern the factual allegations that support Plaintiff's claims and that are relevant to jurisdiction and venue.  See Barrigas v. United States, No. 17-cv-10232, 2018 WL 1244780, at *6 (D. Mass. Mar. 9, 2018) ("A district court may examine facts outside the complaint to determine whether its venue is proper." (quoting Universal Trading & Inv. Co. v. Bureau of Representing Ukrainian Interest in Int'l & Foreign Cts., 898 F. Supp. 2d 301, 317 (D. Mass. 2012))); Ultra-Temp Corp., 194 F.R.D. at 382 ("[C]laims alleged in an original complaint and not contained in an amended complaint are waived.").

On April 9, 2018, at approximately 5:30 p.m., Plaintiff was traveling on Interstate 678 Northbound in Queens, New York, when his automobile was struck by a Key 4U-operated bus as

it merged onto the highway from the Van Wyck Expressway.  [ECF No. 24 at 5; ECF No. 1-2 at 2 ("Police Report")].  Plaintiff alleges that his right forward fender, bumper cover, mud protector, wheel, and headlight were damaged in the collision and seeks relief for those damages in the amount of $4,500.00.  [ECF No. 24 at 5–6].  Immediately following the collision, Plaintiff could not exit his vehicle for five to seven minutes because he was in shock from the accident.  [ECF No. 1 at 7].  At the time of the collision, Plaintiff was eighty-eight years old.  [ECF No. 7 at 1].

Plaintiff experienced long-term side effects from the collision, including "periodic attacks of nausea" where vomiting occurred, sometimes containing blood.  [ECF No. 7 at 1].  Prior to the accident, Plaintiff had rarely experienced stomach pains or nausea.  [Id.].  As a result of the nausea and vomiting, Plaintiff's family doctor suggested he visit a specialist, where he discovered that he had a stomach ulcer for which he was prescribed medication.  [ECF No. 7 at 1; ECF No. 7-2 at 1; ECF No. 7-3].  Because his symptoms appeared four to five weeks after the collision and ulcers can be brought on by stress, Plaintiff alleges that the collision was the likely cause of his stomach ulcer.  [ECF No. 7 at 2].  Plaintiff therefore seeks relief in the amount of $78,000.00 for his "loss of health" from the ulcer.  [ECF No. 24 at 6–7].

### B.    Procedural History

Plaintiff filed his original complaint on December 26, 2018.  [ECF No. 1].  On February 5, 2019, Plaintiff was ordered to show cause as to whether his complaint met the $75,000.00 amount in controversy requirement for diversity jurisdiction.  See [ECF No. 6].  Plaintiff replied on February 25, 2019 by submitting medical documents revealing that he was diagnosed with an ulcer shortly after the accident.  See [ECF No. 7].  On April 8, 2019, the Court dismissed the complaint for failing to satisfy the amount in controversy requirement because the medical bills

Plaintiff provided did not exceed the $75,000.00 required for subject matter jurisdiction.  See [ECF No. 9].  Plaintiff appealed on May 1, 2019, [ECF No. 13], and the First Circuit, finding ambiguity in the record concerning how Plaintiff calculated his "loss of health" claim, remanded back to this Court on August 16, 2019, [ECF No. 21 at 2].  Upon remand, the Court ordered Plaintiff to file an amended complaint "in which the monetary relief . . . is itemized to allow the Court to determine the amount plaintiff claims for each of the following: 'loss of health,' damages to his car, and litigation expenses."  [ECF No. 22].

On August 26, 2019, Plaintiff amended his complaint and requested $82,500.00 in damages, including $4,500.00 for damages related to his vehicle and $78,000.00 for his "loss of health."  [ECF No. 24 at 6–7].  Plaintiff did not renew his request for litigation expenses.  See [id.].  Further, Plaintiff cited case law in support of his contention that it is difficult to estimate the ongoing impact of an accident on a plaintiff's health.  [Id. at 7].  Defendants filed their answers on December 16, 2019, [ECF Nos. 31, 32].[1]  On January 10, 2020, Integon filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction.  [ECF No. 38].  On the same day, Key 4U filed a motion to dismiss for lack of subject matter and personal jurisdiction, and improper venue.  [ECF No. 40].  Plaintiff filed oppositions on January 27, 2020 and February 10, 2020.  [ECF Nos. 47, 48, 51].

---

[1] Integon's answer was filed several days late.  See [ECF No. 30 (notice of return of summons); ECF No. 32 (Integon's answer)].  It was within the Court's discretion, however, to allow Integon's delayed answer, just as it was within the Court's discretion to give Plaintiff additional time to respond to Defendant's motion to dismiss after Plaintiff missed the deadline to oppose. See [ECF Nos. 46, 52]; Cintron-Lorenzo v. Departamento De Asuntos Del Consumidor, 312 F.3d 522, 526 (1st Cir. 2002) ("[C]ourts—especially trial courts—'must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants.'" (quoting Batiz Chamorro v. P.R. Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002))).

## II.      INTEGON'S MOTION TO DISMISS

Integon argues that Plaintiff has both failed to satisfy the amount in controversy requirement for diversity jurisdiction and to state a claim under both Massachusetts and New York law.  [ECF No. 41 at 3, 5].

### A.      Subject Matter Jurisdiction

In evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject matter jurisdiction.  Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).  The Court "appl[ies] a standard of review 'similar to that accorded [to] a dismissal for failure to state a claim' under subsection 12(b)(6)."  Rodriguez v. Mass. Parole Bd., No. 16-cv-11113, 2017 WL 706597, at *2 (D. Mass. Feb. 22, 2017) (quoting Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012)).  In diversity actions, the existence of subject matter jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.

"There are two methods for challenging jurisdiction based on diversity."  Callahan v. Shepherd, No. 17-cv-10508, 2018 WL 1041542, at *1 (D. Mass. Feb. 23, 2018).  Here, Integon raises "a 'sufficiency challenge' (or a 'facial challenge'), in which [it] challenges the sufficiency of the pleaded jurisdictional facts . . . ."  Id. (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)).  When a defendant challenges the sufficiency of the Court's subject matter jurisdiction, "the [C]ourt must credit the plaintiff's well-pleaded factual allegations . . . draw all reasonable inferences from them in [plaintiff's] favor, and dispose of the challenge accordingly." Id. (quoting Valentin, 254 F.3d at 363).

1.      Discussion

Integon contends that dismissal is warranted if it is clear to a legal certainty that the claim

is for less than the required amount in controversy.  [ECF No. 41 at 5 (citing St. Paul Mercury

Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938))].  According to the First Circuit,

> [u]nder St. Paul, a plaintiff's general allegation of damages that meet the amount
> requirement suffices unless questioned by the opposing party or the court.  Once
> the damages allegation is challenged, however, the party seeking to invoke
> jurisdiction has the burden of alleging with sufficient particularity facts indicating
> that it is not a legal certainty that the claim involves less than the jurisdictional
> amount.  A party may meet this burden by amending the pleadings or by submitting
> affidavits.

Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (citations and internal quotation marks

omitted).  Although Plaintiff does not directly address this challenge in his opposition, see [ECF

No. 51], Plaintiff's amended complaint (filed in response to the First Circuit's remand and this

Court's Order on the same issue, see [ECF Nos. 21, 22]), provided the Court with an itemization

of the damages sought for vehicle repairs and loss of health, [ECF No. 24 at 5–6].

After further review of Plaintiff's amended complaint, the record, and evidence Plaintiff

has submitted to date, the Court finds that, at this stage of the proceedings, Plaintiff has

sufficiently alleged that damages due to his loss of health as a result of the April 9, 2018 car

accident satisfy the $75,000.00 amount in controversy requirement.  See Barrett v. Lombardi,

239 F.3d 23, 30 (1st Cir. 2001) ("[A]ll the plaintiff must do . . . in the face of a motion to dismiss

is to set forth facts which, if true, would prevent the trier from concluding *to a legal certainty*

that the potential recovery is capped at a figure below the jurisdictional minimum."); see also

Bobola, 204 F. Supp. 3d at 387 ("A document filed by a *pro se* party 'is to be liberally construed . . . .'" (quoting Erickson, 551 U.S. at 94)).

Furthermore, other courts in this district have found the amount in controversy requirement met in circumstances where, even if unlikely, it is not a legal certainty that a plaintiff could not meet the threshold requirement.  See Duchesne v. Am. Airlines, Inc., 758 F.2d 27, 29 (1st Cir. 1985) (finding it unlikely, but not "legally certain" that pain and suffering from luggage falling on a plaintiff's head would not eclipse $75,000 threshold needed to satisfy amount in controversy despite only $250 in medical expenses); see also Cruz v. Block Island Parasail, Inc., No. 05-cv-336S, 2006 WL 889212, at *5 (D.R.I. Apr. 4, 2006) (finding it was not a legal certainty that a plaintiff's knee injury would not meet the $75,000 threshold where plaintiff alleged embarrassment from scar or permanent injury despite demonstrating only $15,000 in medical bills); Heinitz v. Great Woods, Inc., No. 90-cv-12833, 1991 WL 128515, at *1 (D. Mass. July 10, 1991) (finding it was not a legal certainty that plaintiffs would not recover amount in controversy threshold in connection with allegations of being frightened and upset after employees of concert venue screamed and shook plaintiffs' car while they were sleeping). At this stage, as the bar is not high and Plaintiff is proceeding *pro se*, the Court finds that Plaintiff has met the requirement and the Court has subject matter jurisdiction.

## B.      Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (quoting <u>Centro Médico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005)).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Id.</u> at 44 (quoting <u>Iqbal</u>, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 103 (1st Cir. 2013) (quoting <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732 F.3d 77, 80 (1st Cir. 2013) (citing <u>Grajales</u>, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  <u>Id.</u> (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  <u>Id.</u> (quoting <u>Morales-Cruz</u>, 676 F.3d at 224).

       1.    <u>Discussion</u>

In his opposition, Plaintiff asks the Court review his claims under New York law only, [ECF No. 51 at 1], but has provided the Court with citations to cases from both Massachusetts

and New York that he alleges support the viability of his claim.  [ECF No. 51 at 1, 4–5].

Because the law of either state produces the same result, the Court reviews both Massachusetts

and New York law, without deciding the choice of law issue.

a.      Massachusetts Law

Integon argues that, under Massachusetts law, plaintiffs may not institute direct actions

against insurers without bringing a claim under Massachusetts General Laws Chapter 93A or

Chapter 176D, which Plaintiff has failed to do.  [ECF No. 41 at 3].  The Court agrees.  As the

Massachusetts Court of Appeals recently confirmed in a case involving Plaintiff's claims against

the insurer of a driver involved in a different accident with Plaintiff, "an injured party may not

maintain a cause of action against a liability insurer for the actions of its insured."  Lifchits v.

Progressive Corp., No. 19-P-446, 2020 WL 1158017, at *1 (Mass. App. Ct. Mar. 10, 2020)

(citing Tessier v. State Farm Mut. Ins. Co., 334 F. Supp. 807, 809 (D. Mass. 1971), aff'd, 458

F.2d 1299 (1st Cir. 1972)).

Plaintiff's opposition cites eight Massachusetts cases in which individual plaintiffs sued

insurance companies directly, but none are applicable to the facts at hand.  [ECF No. 51 at

4].  Some involve plaintiffs filing suit against their own insurer.  See, e.g., Dominguez v. Liberty

Mut. Ins. Co., 706 N.E.2d 647, 648 (Mass. 1999) (plaintiff filing suit against their own insurer);

Roth v. Amica Mut. Ins. Co., 796 N.E.2d 1281, 1282 (Mass. 2003) (same); Given v. Commerce

Ins. Co., 796 N.E.2d 1275, 1276 (Mass. 2003) (same).  Others bring claims under Chapter 93A

or 176D, which supports Integon's position.  See, e.g., Skiffington v. Liberty Mut. Ins. Co., 94

N.E.3d 431, 432, (Mass. App. Ct. 2018) (bringing claims under Chapters 93A and 176D after

liability had been established), review denied, 103 N.E.3d 1229 (Mass. 2018); Golchin v. Liberty

Mut. Ins. Co., 950 N.E.2d 853, 857 (Mass. 2011) (bringing claim under Chapter 93A against

9

plaintiff's own insurer); <u>Bithoney v. Pilgrim Ins. Co.</u>, No. 03-1547-E, 2006 WL 59742, at *1

(Mass. Super. Ct. Jan. 4, 2006) (bringing Chapter 93A and 176D claims in connection with

insurer's settlement offer).  Finally, the remaining two cases cited by Plaintiff involved lawsuits

against third-party insurers that were filed only after the third party's liability had been

established.  <u>Ramirez v. Commerce Ins. Co.</u>, 71 N.E.3d 1199, 1200 (Mass. App. Ct. 2017)

(noting that plaintiff's dispute with insurer centered around whether the insurer owed her sales

tax on the replacement value of her vehicle after the insurer had already confirmed the driver's

liability for the accident); <u>Borden v. Progressive Direct Ins. Co.</u>, 30 N.E.3d 856, 857 (Mass. App.

Ct. 2015) (noting that plaintiff had already brought suit directly against the driver and owner of

the vehicle that hit her, and only sought declaratory judgment after the driver's insurer refused

coverage under the driver's policy).

Accordingly, the Court finds that, at this stage and on the facts alleged, Plaintiff may not

bring claims against Integon pursuant to Massachusetts law.

### b.      New York Law

Integon also argues that, under New York law, plaintiffs may not bring direct claims

against insurers absent a finding of liability as to an insured.  [ECF No. 41 at 4 (citing

<u>Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.</u>, No. 13-cv-03266, 2014 WL

672926, at *1 (E.D.N.Y. Feb. 20, 2014)].  Case law supports Integon's position.  "[T]he New

York Court of Appeals [has] made clear that an injured third party has no cause of action at

common law against an insurer."  <u>Commonwealth Land Title Ins.</u>, 2014 WL 672926, at *1

(citations omitted); <u>see</u> <u>Lang v. Hanover Ins. Co.</u>, 820 N.E.2d 855, 856 (N.Y. 2004)) ("The issue

presented in this appeal is whether the injured party may bring a declaratory judgment action

against the insurance company before securing a judgment against the tortfeasor.  We hold that a judgment is a statutory condition precedent to a direct suit against the tortfeasor's insurer.")

Plaintiff cites five New York cases that he alleges permit plaintiffs to bring claims directly against insurers, but again none are applicable to the facts and posture of this case. [ECF No. 51 at 4].  Specifically, all of the cases cited involve plaintiffs suing their own insurers.  See Rekemeyer v. State Farm Mut. Auto. Ins. Co., 828 N.E.2d 970 (N.Y. 2005) (bringing claim against plaintiff's own insurer); Books for Less, LLC v. United Nat'l Ins. Co., 86 N.Y.S.3d 875 (N.Y. App. Div. 2018) (bringing claim against plaintiff's own property insurer), leave to appeal dismissed, 122 N.E.3d 560 (N.Y. App. Div. 2019); Mann v. Gulf Ins. Co., 771 N.Y.S.2d 176 (N.Y. App. Div. 2004) (bringing claim against plaintiff's own insurer for failure to cover claim); N. Y. Cent. Mut. Fire Ins. Co. v. Gershovich, 766 N.Y.S.2d 596 (N.Y. App. Div. 2003) (discussing arbitration issue between plaintiff and her insurer); Newmark v. Progressive Ins. Co., 767 N.Y.S.2d 232 (N.Y. App. Div. 2003) (bringing a claim against plaintiff's own insurer for not paying plaintiff's lost wages claim).

The Court finds that, given the posture of this case, under either Massachusetts or New York law, Plaintiff may not bring claims against Integon unless and until liability as to Integon's insured, Key 4U, has been established.  Accordingly, Integon's motion to dismiss for failure to state a claim, [ECF No. 38], is GRANTED.

## III.    KEY 4U'S MOTION TO DISMISS

Key 4U raises two grounds for dismissal: (1) that the Court lacks personal jurisdiction, and (2) that venue is improper.[2]  [ECF No. 42 at 2, 6].

---

[2] Key 4U also raised a 12(b)(1) challenge relating to the amount in controversy requirement, as did Integon.  [ECF No. 42 at 7].  Having already found that the Court has subject matter

A.        **Personal Jurisdiction**

Personal jurisdiction refers to a court's "power to require the parties to obey its [orders]." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)).  "A plaintiff consents to the personal jurisdiction of a court by bringing suit in that court."  Roberts v. Jack L. Marcus Co., No. 17-cv-11782, 2018 WL 443445, at *2 (D. Mass. Jan. 16, 2018) (citing Adam v. Saenger, 303 U.S. 59, 67 (1938)).  As to a defendant, however, the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471−72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  Therefore, a court may not assert jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  Volkswagen v. Woodson, 444 U.S. 286, 297 (1980).  In addition to satisfying due process concerns, "[t]o establish personal jurisdiction in a diversity case, a plaintiff must satisfy . . . the forum state's long-arm statute . . . ."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

As a rule, a plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant.  Daynard, 290 F.3d at 50.  Under the "prima facie" standard for determining whether a plaintiff has met this burden, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."

---

jurisdiction on this same basis in Section II.A, supra, the Court does not address the issue again here.

Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  In assessing whether personal jurisdiction exists, the Court may consider "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  Plaintiffs may not, however, establish a court's personal jurisdiction over defendants with "unsupported allegations in [the] pleadings," and are instead "obliged to adduce evidence of specific facts."  Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).  The Court may also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted."  Daynard, 290 F.3d at 51 (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

"Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).  Section 3 of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside of the Commonwealth.  Mass. Gen. Laws ch. 223A, § 3.  "The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test."  Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 112 (D. Mass. 2003) (citing Tatro v. Manor Care, Inc.,

625 N.E.2d 549, 554 (Mass. 1994)).  The arising from inquiry asks whether "the defendant's

contacts with the Commonwealth constitute[d] the first step in a train of events that result[ed] in

the . . . injury."  <u>Access Now, Inc. v. Otter Prods., LLC</u>, 280 F. Supp. 3d 287, 291 (D. Mass.

2017) (internal quotation marks omitted) (quoting <u>Lyle Richards Int'l, Ltd. v. Ashworth, Inc.</u>,

132 F.3d 111, 114 (1st Cir. 1997)).

        1.    <u>Discussion</u>

      According to Plaintiff's original complaint and the police report attached thereto, as well

as Plaintiff's amended complaint, Key 4U's corporate address is in New York and the accident

occurred in New York.  <u>See</u> [ECF No. 1 at 2 (listing Key 4U's address in Queens, New York);

Police Report at 2 (stating accident occurred in Queens, New York); ECF No. 24 at 3 (listing

Key 4U's address in Queens, New York)].  Plaintiff has failed to provide any evidence that the

accident or any actions taken by Key 4U had any connection to Massachusetts.  <u>See</u> [ECF Nos.

1, 24, 47, 48, 51].  In its memorandum in support of its motion to dismiss, Key 4U stated that it

"does not have any offices in Massachusetts, . . . does not operate, engage, or carry on any

business or business ventures in Massachusetts, . . . has not contracted to provide services in

Massachusetts, and . . . does not have any interest in any real property in Massachusetts."  [ECF

No. 42 at 3]; <u>see also</u> [ECF No. 40-1 at 1 (affidavit of Key 4U President Howard Beitsch) ("Key

4U does not operate, conduct, engage, or carry on a business or business ventures in

Massachusetts.")]

      In his opposition, Plaintiff contends that Key 4U's guilt is so obvious "that the place of

consideration for this case does not matter" and that the question of personal jurisdiction "has no

practical significance."  [ECF No. 51 at 2].  Plaintiff's view of the merits of the issue, however,

cannot carry the day.  Although Plaintiff resides, sought treatment, and experienced the effects of

the accident in Massachusetts, that is insufficient for the Court to exercise personal jurisdiction

over Key 4U.  [ECF No. 24 at 1; ECF No. 51 at 2]; see Gauthier v. United States, No. 10-cv-

40116, 2011 WL 3902770, at *9 (D. Mass. Sept. 2, 2011) (declining to exercise jurisdiction over

defendant involved in out-of-state incident even when effects of incident were felt in

Massachusetts); Tramonte v. Korean War Veteran's Ass'n, Inc., No. 01-cv-11005, 2002 WL

745813, at *3 (D. Mass. Feb. 5, 2002) (same); Mello v. K-Mart Corp., 604 F. Supp. 769, 771 (D.

Mass. 1985) (same).  "Because there is no provision of the long-arm statute on which to

predicate jurisdiction, the Court need not reach the question of whether plaintiff['s] assertion is

constitutionally sound."  Mello, 604 F. Supp. at 772 (citing Singer v. Piaggio & C., 420 F.2d

679, 681 (1st Cir. 1969)); see Gauthier, 2011 WL 3902770, at *9 (same).

     Although this Court may not exercise personal jurisdiction over Key 4U, under 28 U.S.C.

§ 1631, a district court may transfer a case to another district to cure a lack of jurisdiction:

> Whenever a civil action is filed in a court . . . and that court finds that there is a
> want of jurisdiction, the court shall, if it is in the interest of justice, transfer such
> action or appeal to any other such court . . . in which the action or appeal could have
> been brought at the time it was filed or noticed, and the action or appeal shall
> proceed as if it had been filed in or noticed for the court to which it is transferred
> on the date upon which it was actually filed in or noticed for the court from which
> it is transferred.

28 U.S.C. § 1631.  "The First Circuit has interpreted this provision to establish a presumption in

favor of transfer—rather than dismissal—when the forum court lacks personal jurisdiction over

one of the defendants."  TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d

195, 214 (D. Mass. 2019) (citing Federal Home Loan Bank of Boston v. Moody's Corp., 821

F.3d 102, 119 (1st Cir. 2016)); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003)

("Congress's use of the phrase 'shall . . . transfer' in section 1631 persuasively indicates that

transfer, rather than dismissal, is the option of choice.").

**B.     Venue**

To determine whether transfer is appropriate, the Court must consider the issue of venue. The term "venue" refers to "the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts." 28 U.S.C. § 1390(a). "[T]he general purpose of the venue rules is 'to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (alteration in original) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183–84 (1979)). The general venue statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "A corporate defendant resides in any 'judicial district in which it is subject to personal jurisdiction at the time the action is commenced.'" Peterson v. Burke, 433 F. Supp. 3d 212, 219 (D. Mass. 2020) (quoting 28 U.S.C. § 1391(c)(2)).

1.     Discussion

Key 4U argues that Massachusetts is an improper venue because Key 4U is not a resident of Massachusetts and the events giving rise to Plaintiff's claims occurred in New York. [ECF No. 42 at 6–7]. "Where, as here, the defendant objects to venue, 'ample authority' exists that the burden of establishing venue is on the plaintiff." Gill v. Nakamura, No. 14-cv-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015) (citing Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979)). Because the Court has found it does not have personal jurisdiction over Key 4U, see Section III.A, supra, Key 4U does not "reside" in this judicial district for the

purposes of § 1391.  Therefore, venue is improper in this judicial district.  See Moore v. S.N.H. Med. Ctr., No. 08-cv-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009) ("[Corporate defendant] is not subject to personal jurisdiction, and therefore does not reside, in Massachusetts. Accordingly, venue . . . in Massachusetts is inappropriate.").

Although Massachusetts is an inappropriate venue, the record contains facts indicating that New York is the appropriate venue to litigate this matter.  [ECF No. 42 at 6–7 ("[T]he events or omissions giving rise to the plaintiff's claim occurred entirely in New York . . . .")]; see also [Police Report at 2 (stating that the accident occurred in New York and that Key 4U is a New York resident)].  Similar to § 1631, under 28 U.S.C. § 1406(a), a district court may "'transfer [a] case to any district or division in which it could have been brought' if it 'lay[s] venue in the wrong division or district' and transfer is 'in the interest of justice.'"  TargetSmart Holdings, 366 F. Supp. 3d at 214 (alterations in original) (citing 28 U.S.C. § 1406(a)).  Although § 1406 "does not explicitly mention jurisdiction, the Supreme Court has interpreted its mandate to 'authorize transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not.'"  Id. (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)).

Both §§ 1406 and 1631 support transfer over dismissal in the interests of justice and to promote judicial economy.  See Britell, 318 F.3d at 74 (stating that the legislative history of § 1631 favors transfer over dismissal of "an action . . . that might thrive elsewhere" as furthering "the salutary policy favoring the resolution of cases on the merits"); TargetSmart Holdings, 366 F. Supp. 3d at 214 (stating that transfer under § 1406 would promote the interest of justice and "facilitate the speedy and efficient resolution of [the] case").  There exists a strong public interest in "prevent[ing] duplicitous litigation that would prove 'wasteful and costly'" which also

supports transfer over dismissal.  See Britell, 318 F.3d at 74 (quoting S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21).  In addition, "[o]ur judicial system zealously guards the attempts of pro se litigants on their own behalf," thus the interests of justice here favor transfer over dismissal.  See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).[3]

Because Key 4U is a resident of Queens, New York, the accident occurred in Queens, New York, and substantive public interests weigh in favor of transfer rather than dismissal of Plaintiff's case, this Court finds it proper and in the interests of justice to transfer this matter to the Eastern District of New York.  See, e.g., Phoenix Ins. Co. v. Cincinnati Indem. Co., No. 16-cv-223S, 2017 WL 3225924, at *6 (D.R.I. Mar. 3, 2017) ("[D]ue to the lack of personal jurisdiction and proper venue in this District and the totality of the circumstances, I conclude that the interests of justice would be better served by transfer of this action . . . than by dismissal under Rules 12(b)(2) and (3) . . . ."), report and recommendation adopted, No. 16-cv-223S, 2017 WL 2983879 (D.R.I. July 13, 2017).

IV.     CONCLUSION

Accordingly, Integon's motion to dismiss, [ECF No. 38], is GRANTED and Key4U's motion to dismiss, [ECF No. 40], is DENIED.  This action will be transferred to the Eastern District of New York for further proceedings.

SO ORDERED.

August 17, 2020                                                /s/ Allison D. Burroughs
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE

---

[3] The Court is sympathetic to Plaintiff's contention that his age makes travel to New York to litigate this matter inconvenient, [ECF No. 51 at 2], but the Court may not ignore the limitations to its exercise of jurisdiction as set forth under federal law.  Although New York may be a less convenient forum for Plaintiff, it is the alternative to an outright dismissal of his claims.